## Dettinger v. Fry Communications Inc.

*Dorothy Messner Feldman,* for plaintiff.
*Robert A. Swift,* for defendant.

HESS. *J.,* April 29, 1988 — This is a suit for wrongful discharge. Plaintiff alleges, specifically, that in March 1985 Fry approved a medical leave and, upon plaintiff's return to work, failed to reinstate him but, instead, insisted that he take a lower-paying job. The complaint alleges that defendant's foreman informed plaintiff that he was demoted because of his disability. Plaintiff claims that he was fired by defendant, Fry Communications Inc., when defendant learned of plaintiff's intention to file a charge, against his employer, with the Pennsylvania Human Relations Commission.

Preliminary objections in the nature of a demurrer were filed by defendant. Certain preliminary objections, specifically those having to do with counts in defamation and interference with prospective contractual relationships, were sustained. The preliminary objections to plaintiff's count for wrongful discharge, however, was denied. Thereafter, counsel for defendant sent a notice of deposition to plaintiff directing him to appear at the offices of Kohn, Savett, Cline & Graf, P.C., 1101 Market Street,

Philadelphia, Pa. On October 19, 1987, at 10:00 a.m., even though both plaintiff's residence and defendant are located in Cumberland County. Plaintiff thereupon filed a motion for protective order asserting that his appearance at the deposition in Philadelphia would entail "unreasonable annoyance, burden and expense in that plaintiff would have to lose a full day's work and is completely unfamiliar with the City of Philadelphia's parking and traffic." Plaintiff's petition averred also that he was agreeable to being deposed in or around Cumberland County where plaintiff and defendant are located and where the action was filed. Pursuant to said motion, this court granted a rule on defendant to show cause why the motion for protective order should not be granted. Same has been responded to and the matter briefed and argued.

We agree with plaintiff that this controversy is governed by Rule of Civil Procedure 4012 wherein the court is granted authority, upon motion by a person from whom a deposition is sought, to protect that person "from unreasonable annoyance, embarrassment, oppression, burden or expense" by making an order which, among other things, provides:

"(2) that the discovery of deposition shall be only on specified terms and conditions; including a designation of a time and place;" Pa. R.C.P. 4012(a)(2). Other than this rather general guidance, there is little, if any, direction concerning the situs of depositions in the Pennsylvania rules. Though not resolving the question before us, rule 4008 permits the court to make an order requiring the payment of reasonable expenses, including attorneys' fees, where a deposition is taken more than 100 miles from the courthouse. The "courthouse" referred to is the one in which the action is pending (see rule 4001(b)) and, for reasons which we will discuss

more fully, is quite literally the "starting point" for our resolution of this case.

Such an interpretation is consistent with at least one county level case where defendant refused to be deposed at the office of plaintiff's attorney. While not the issue in the matter sub judice, the court in *Kaveski v. McLaughlin,* 54 D.&C. 2d 756 (1971), agreed with defendant that pressures and influences "far more serious than mere embarrassment might well be involved if a litigant and his witnesses involuntarily may be required to submit themselves" to the hostile atmosphere of the office of opposing counsel.

"Especially is this true where the representation of so many suitors in this court is increasingly being found in out-of-county lawyers authorized to practice here by reason of Supreme Court Rule 14.[1] In the ordinary case, it may well be that respective counsel will attempt to accommodate each other and their respective clients by agreeing to an appropriate locale for the taking of depositions, including their own law offices if mutually convenient and satisfactory. We hope that such agreements will be the usual situation. On the other hand, where the parties do not agree, we believe that it must be the policy of this court not to require one side to attend the law offices of the other. Under such circumstances, neutral ground should be availed of, and the various hearing rooms *in the courthouse in the county seat* provide the most logical locations." *Id.* at 759 (emphasis supplied).

We cannot agree that the law office of an opposing attorney is per se so intimidating as to suggest the courthouse as the only alternative. As a general rule, the situs of the deposition should be selected

---

1. Now Pa. B.A.R. 232.

by the lawyer who does the deposing and may include a law office. We hasten to add, however, that, where the parties cannot agree otherwise, the deposition should take place in the county in whose courthouse the suit was filed.

An obvious exception is the type of situation posed in *Gontz v. Dando,* 15 Cumberland L. J. 119 (1965), an earlier Cumberland County holding which this opinion is not meant to disturb. In that case Judge Weidner dealt with the reality of the burgeoning communities at the eastern end of the county and the fact that they are, in many instances, closer to the state capital of Harrisburg than to the county seat at Carlisle. In *Gontz,* both principle counsel were located in Harrisburg and the litigants were either residents of Harrisburg or lived just across the river in Cumberland County, "some 18 miles removed from the courthouse at Carlisle." In refusing to sustain an objection to depositions scheduled to take place in Harrisburg, Judge Weidner also concluded that counsel were "engaged in a technical jousting under the discovery rules, showing an intention to obstruct and thwart the salutory purposes of discovery . . ."

The only real similarity between this and the *Gontz* case is that there are participants who refuse to compromise on a meeting place. Specifically, a Cumberland County plaintiff will not go to Philadelphia and a Philadelphia lawyer will not come to Cumberland County. By way of a literary parallel, this is a case where "the mountain will not go to Mohammed." The practical effect of our holding will require that "Mohammed go to the mountain."[2]

---

2. "Mahomet made the people believe that he would call a hill to him, and from the top of it offer up his prayers for the observers of his law. The people assembled: Mahomet called

In determining whether the instant proposed depositions are unreasonably annoying or burdensome, the parties cite us to certain subjective considerations. Plaintiff acknowledges that defendant is willing to pay this travel expenses but still objects to making the trip claiming that he is unfamiliar with Philadelphia and "unused to metropolitan areas generally." He is, in short, "extremely uncomfortable at the prospect of traveling to a large city to be deposed." Obviously at ease with urban life, the attorney for defendant argues that plaintiff's position is "specious" refusing to lend any credence at all to the concerns of plaintiff. All of this goes only to show that, with respect to the enjoyment of a metropolis, "one man's meat is another man's poison."[3] Members of this court, some more frequently than others, have made visits to the city of Brotherly Love, finding the city accessible, stimulating and culturally uplifting; this view is to be contrasted, of course, with the attitudes of people such as W.C. Fields, who chose a visit to Philadelphia only as an alternative to interment.[4] The resolution of this case does not, however, turn on these kinds of purely personal considerations. Were this not so, all similar disputes would have to be resolved on a case by case basis for purely subjective reasons. Here, the cause of action arose in Cumberland County, the suit was filed here, and both of the parties are located in Cumberland County. These are objective criteria

the hill to come to him again and again; and when the hill stood still, he was never a whit abashed, but said, 'if the hill will not come to Mahomet, Mahomet will go to the hill.' " Francis Bacon: Of Boldness.

3. Oswald Dykes, English proverbs, 1709.

4. "On the whole, I'd rather be in Philadelphia." W. C. Fields, proposed as his epitaph.

which make unreasonable a requirement that plaintiffs travel to Philadelphia for depositions.

We note, with interest, the holding in *Twardzik v. Sepauley*, 286 F. Supp 346 (E.D.Pa. 1968). There, the U.S. District Court for the eastern district of Pennsylvania ruled in a case where defendants and plaintiff resided and were employed in Schuylkill County. The existing federal rule required persons to attend depositions only in the county wherein they were served, or within 40 miles from the place of such service, or at such convenient place as would be fixed by an order of court. Fed. R. C. P. 45(d) (2). Notwithstanding the request to do so, the federal court refused to require defendants to go to Philadelphia for the purpose of depositions, holding that it would be "oppressive" to do so.

It is, clearly, as inconvenient for defense counsel to come to Carlisle as it is for plaintiff to travel to Philadelphia. Notwithstanding, the purpose of protective orders is to shield parties and deponents from gross inconvenience, not their lawyers. We note that defendant's attorney sought the assistance of local counsel in the argument of the protective order. Philadelphia counsel might just as easily employ the services of other counsel to assist in deposing plaintiff in this county.

## ORDER OF COURT

And now, April 29, 1988, plaintiff's motion for protective order is granted and the parties directed to proceed consistent with the opinion issued herewith.